USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/23/2008

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA                    :

            - against -                     :        **MEMORANDUM DECISION**

JULIO CESAR LOPEZ-PENA,                      :        S1 05 Cr. 191 (DC)
      a/k/a "Julito,"
      a/k/a "J,"                             :
      a/k/a "Comba,"
                                             :
            Defendant.
                                             :
- - - - - - - - - - - - - - - - - - -x


**APPEARANCES:**          MICHAEL J. GARCIA, Esq.
                          United States Attorney for the
                            Southern District of New York
                          Attorney for the United States
                                By:  Marc P. Berger, Esq.
                                     Rebecca Monck Ricigliano, Esq.
                          One St. Andrew's Plaza
                          New York, New York  10007


                          EVANS D. PRIESTON, Esq.
                          Attorney for Defendant
                          99-14 63rd Road
                          Rego Park, New York  11374


**CHIN, District Judge**

        On December 5, 2007, a jury in this case convicted

defendant Julio Cesar Lopez-Pena of conspiracy to distribute five

kilograms or more of cocaine intending and knowing that it would

be imported into the United States, in violation of 21 U.S.C. §§

959, 960(a)(3), and 960(b)(1)(B)(ii).

        Lopez-Pena moves for an order setting aside the verdict

and granting him a new trial on the basis of newly discovered

evidence.  For the reasons that follow, the motion is denied in

all respects.

## STATEMENT OF THE CASE

### A.  Summary of the Facts

The evidence presented at trial established the following:

The Norte Valle cartel was a massive illegal narcotics organization that operated out of Colombia in the 1990s and continued at least until 2005.  It was responsible for sending tens of thousands of kilos of cocaine to the United States.

Wilber Varela was one of the leaders of the cartel, and by the mid to late 1990s, Lopez-Pena had become one of Varela's top lieutenants, serving as an enforcer, handling problems with the police, performing counter-surveillance, and collecting drug debts.  Lopez-Pena also personally took an ownership interest in several shipments of cocaine to the United States.  For example, he supplied 500 kilos of an 8,000-kilo shipment of cocaine sent to the United States.

The Government's evidence against Lopez-Pena included, among other things, testimony of cooperating witnesses who worked with Lopez-Pena and described his involvement in the drug business; recordings of intercepted telephone calls in which Lopez-Pena -- in his own words -- implicated himself in, for example, acts of violence and the bribery of police officers; and physical evidence, including a Glock 9 mm pistol, rounds of ammunition, and eleven cell phones found in his home when he was arrested, as well as cell phone interception equipment found in his apartment in Cali.

## B.    The Evidence of the Murders

On November 1, 2007, before trial, the Government moved
in limine for the admission of evidence of certain drug-related
murders in the 1990s purportedly involving Lopez-Pena.  The
murders were not charged in the case, but the Government
contended that the murders were in furtherance of the charged
conspiracy, and the Government wanted to offer evidence of the
murders as Rule 404(b) evidence.  At a conference on November 19,
2007, the Government explained that it wanted to offer evidence
of three murders that occurred in 1996.  On November 20, 2007,
the Government submitted a letter providing further detail.  The
first incident involved the murder of rival cartel members in May
1996 near a checkpoint on a toll road in Colombia.  The second
occurred "a short time after" at a supermarket in Barranquilla,
Colombia.  The third murder occurred at a pool hall in Bogota,
Colombia.

On November 21, 2007, I issued an order overruling
Lopez-Pena's objections to the evidence of the three 1996
murders.  On November 26, 2007, I explained my reasoning on the
record.  I explained that although the murders predated the
charged conspiracy, they still constituted evidence of the
existence of the conspiracy, and they also explained Lopez-Pena's
role in the conspiracy and how he developed into that role.
(11/26/07 Tr. at 4).  I was of the view that the murders were
part of and in furtherance of the conspiracy, and noted that
Lopez-Pena could not be charged with them because of the change

-3-

in the extradition law in 1997. (Id.). I explained that the probative value was high and outweighed the danger of unfair prejudice. (Id.). I noted also that evidence would be presented of a later murder that fell within the time period of the charged conspiracy. (Id. at 4-5).

At trial, the evidence established that Lopez-Pena admitted in May 1996 that earlier that day he had participated in the murders of several members of a rival cartel near the toll booth. (11/27/07 Tr. at 126-28). A "[c]ouple weeks later," Lopez-Pena admitted that he was involved in the murder in the supermarket. (Id. at 129-30). A "[c]ouple of months later," Lopez-Pena, in a conversation in Bogota, admitted that he had been involved in the murder in Colombia. (Id. at 130-33).

C.    **The New Evidence**

In his motion for a new trial, Lopez-Pena presents evidence that he contends proves that he could not have committed the three murders in Colombia in 1996 because the evidence shows that he was in New York from February 1995 through October 1996, and that he was incarcerated at one point in New York. (Prieston Aff. ¶¶ 5-6). He contends that he was not able to obtain the evidence until after the trial was concluded. (Id. ¶ 7). The evidence consists of documents (attached to the Prieston affidavit) showing that he attended Queens College in New York in the spring of 1996 and newspaper articles (in Spanish) apparently establishing when the murders occurred. The documents also include a birth certificate for a girl whose last name is listed

-4-

as "Nanez," who was born on August 9, 1996, in Queens, but no explanation is provided as to the relevancy of this document, as no information is provided for the father of the child. The documents also include a one-page record (in Spanish) of trips showing flights on certain dates, but again no explanation is provided. Apparently, the document provides information with respect to certain of Lopez-Pena's entries to and/or departures from Colombia.[1]

## DISCUSSION

### A. Motions for a New Trial

Pursuant to Rule 33, a court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A new trial is to be granted only "in the most extraordinary circumstances." United States v. Locascio, 6 F.3d 924, 949 (2d Cir. 1993). The defendant bears the burden of proving that this extraordinary remedy should be granted. United States v. Sasso, 59 F.3d 341, 350 (2d Cir. 1995).

Nonetheless, a trial court has "'broad discretion . . . to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice.'" See United States v.

---

[1]     The Government acknowledges that the documentary evidence shows that Lopez-Pena was in custody in New York from July 23, 1996, when he was arrested on drug charges filed in the Eastern District of New York, until September 30, 1996, when he was released on bail. (Gov't Mem. at 4). At some point thereafter, he absconded and did not appear at subsequent court proceedings. (Id.).

Ferguson, 246 F.3d 129, 133 (2d Cir. 2001) (quoting United States
v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992)).  In deciding
whether to grant a motion for a new trial, "the judge is not
required to view the evidence in the light most favorable to the
prosecution."  United States v. Coriaty, No. 99 Cr. 1251 (NT),
2001 WL 1910843, at *2 (S.D.N.Y. July 16, 2001).  In addition,
"the court is entitled to 'weigh the evidence and in so doing
evaluate for itself the credibility of the witnesses.'"  United
States v. Robinson, 430 F.3d 537, 543 (2d Cir. 2005) (internal
citations omitted).

     At the same time, "the court may not wholly usurp the
jury's role.  It is only where exceptional circumstances can be
demonstrated that the trial judge may intrude upon the jury
function of credibility assessment."  Id. (internal quotations
and citations omitted).

     The overriding concern on a Rule 33 motion is "whether
letting a guilty verdict stand would be a manifest injustice."
Ferguson, 246 F.3d at 134.  And generally, a court "has broader
discretion to grant a new trial under Rule 33 than to grant a
motion for acquittal under Rule 29."  Id.

     Where a motion for a new trial is based on a claim of
newly discovered evidence, the defendant bears the burden of
establishing that:  (1) the evidence is genuinely new, that is,
that it could not, with due diligence, have been discovered
before or during the trial; and (2) the evidence "is so material
and noncumulative that its admission would probably lead to an

acquittal." United States v. Zaqari, 111 F.3d 307, 322 (2d Cir. 1997) (citing United States v. Siddiqi, 959 F.2d 1167, 1173 (2d Cir. 1992)). As to the first element, the Second Circuit recently noted that "[o]ne does not 'discover' evidence after trial that one was aware of prior to trial. To hold otherwise stretches the meaning of the word 'discover' beyond its common understanding." United States v. Owen, 500 F.3d 83, 89-90 (2d Cir. 2007) (emphasis in original). As to the second element, evidence is material only "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different," or if it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Kyles v. Whitley, 514 U.S. 419, 433, 435 (1995).

Pursuant to Rule 33 of the Federal Rules of Criminal Procedure, a motion for a new trial based on "newly discovered evidence must be filed within 3 years after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(1).

## B.  Application

Lopez-Pena's motion for a new trial is denied.

First, the evidence is not genuinely new, for all of it could have been discovered before or during trial. Prior to the commencement of trial, Lopez-Pena obviously knew where he was in 1996. He knew or should have known that this was an issue as early as November 19, 2007, when the Government explained that it wanted to present evidence of three murders in 1996. Lopez-Pena

could have obtained this historical information then. The newspaper articles and Queens College documents surely could have been obtained from public sources or subpoenaed, and surely Lopez-Pena had access -- prior to or during trial -- to equivalent documents showing his whereabouts in 1996.

Second, even if the evidence is considered on its merits, it falls far short of establishing that it would have produced a different result in the trial. It certainly does not undermine my confidence in the verdict, and I do not remotely believe that letting the verdict stand would result in manifest injustice.

The proferred evidence does not prove that Lopez could not have committed the murders in Colombia in 1996. In fact, the Queens College transcript shows that he stopped attending classes and thus was not given a grade for the summer semester. The documents do not show that he could not have been in Colombia at any particular time in 1996, although the Government acknowledges that Lopez-Pena was incarcerated in New York from July 23 to September 30, 1996. But the testimony implicating Lopez-Pena in the three murders gave only approximate dates, and it is certainly possible that he was in Colombia on May 30, 1996 and June 3, 1996, when the newspaper articles show the first two murders occurred. (See Gov't Mem. at 12). The testimony was that Lopez-Pena talked about the third murder a "[c]ouple of months" after the second, and thus it is certainly possible the third murder occurred after Lopez-Pena was released on September

-8-

30, 1996 and absconded, apparently back to Colombia.

Moreover, Lopez-Pena was not tried for the three murders; they were offered as background evidence. Lopez-Pena was tried for participating in a narcotics conspiracy beginning in December 1997, and the evidence of Lopez-Pena's involvement in that conspiracy was overwhelming. The additional evidence would not likely have produced a different verdict.

## CONCLUSION

The motion for a new trial is denied.

Dated:   New York, New York
         May 23, 2008

DENNY CHIN
United States District Judge