UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA                           :

             - v -                                :        **ORDER**

JULIO CESAR LOPEZ-PENA,                            :        05 Cr. 191-1 (DC)

             Defendant.                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

CHIN, Circuit Judge:

      In separate motions, defendant Julio Cesar Lopez-Pena, proceeding *pro se*, seeks a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 821 to the U.S. Sentencing Guidelines, Dkt. 151 at 1, and compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Dkt. 153 at 1.

      On December 5, 2007, Lopez-Pena was convicted of conspiracy to distribute cocaine intending and knowing it would be imported into the United States in violation of 21 U.S.C. § 963. Dkt. 71. I sentenced Lopez-Pena principally to 540 months' imprisonment. *See United States v. Lopez-Pena*, No. S1 05 Cr. 191(DC), 2008 WL 2169657 at *1 (S.D.N.Y. May 23, 2008); *United States v. Sanpedro*, 352 F. App'x 482, 484 (2d Cir. 2009) (affirming conviction and sentence), *cert. denied sub nom., Lopez-Pena v. United States*, 559 U.S. 1021 (2010).

Since then, Lopez Pena has filed two motions for compassionate release -- the first in 2020 and the present in 2025. Dkts. 132, 153. Lopez-Pena has also filed four motions for reduction of sentence -- in 2015, 2017, 2018, and the present in 2024. Dkts. 91, 100, 112, 151. I denied all of Lopez-Pena's previous motions, and I deny the present motions on similar grounds.

## DISCUSSION

### I. Motion for Compassionate Release

A motion for compassionate release under section 3582(c)(1) requires the following: First, the defendant must exhaust all administrative remedies, barring a "waiver or forfeiture by the [G]overnment." *United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021) (per curiam). Second, there must be "extraordinary and compelling reasons" that "warrant such a reduction" in the defendant's sentence. *Id.* Third, the court must consider the sentencing factors set forth in 28 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A).

First, I accept Lopez-Pena's previous claim to have exhausted his administrative remedies. Dkt. 149 at 2. Even though Lopez-Pena does not repeat this representation in the instant motion, the court may deem a defendant's prior exhaustion of remedies "as having satisfied the exhaustion requirement for [the] renewed motion." *See, e.g., United States v. Carbonaro*, No. 02 Cr. 743-05 (CM), 2022 WL 3536116, at *2 (S.D.N.Y. Aug. 18, 2022) (considering the representation as to exhaustion in a movant's original request for compassionate release as applicable to the new motion). Based on

2

Lopez-Pena's prior representation that he has exhausted, I assume he has satisfied his obligation to exhaust administrative remedies with respect to the present motion. *See* Dkt. 149 at 2.

Second, Lopez-Pena argues that two circumstances are extraordinary and compelling reasons for granting him relief: (1) his mother's ill-health and consequent need for care; and (2) changes in the law that have purportedly produced a gross disparity between his present sentence and prospective sentence under the new law. Dkt. 153 at 1. I address each circumstance in turn.

### A. *Mother's Health*

When a movant claims that the extraordinary or compelling reason warranting his compassionate release is ill-health, this Court has required substantiation of the claimed health condition. *See United States v. Wang*, No. 11 Cr. 730 (PGG), 2022 WL 2668252, at *4 (S.D.N.Y. July 11, 2022) (requiring "medical records" showing that the movant's parents were incapable of caring for themselves), *aff'd*, No. 22-1821, 2024 WL 1406640 (2d Cir. 2024); *see also United States v. Gotti*, 433 F. Supp. 3d 613, 616-19 (S.D.N.Y. 2020) (requiring movant to establish that he had the medical conditions that were the basis for his motion for compassionate release); *United States v. Ebbers*, 432 F. Supp. 3d 421, 423 n.1, 431-32 (S.D.N.Y. 2020) (relying on "medical tests, results, and diagnoses" to determine if the movant's health supported compassionate release), *abrogated on other grounds by*, *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir.

2020); *United States v. Bailey*, No. 97 Cr. 269 (DLC), 2021 WL 4942954, at *1 (S.D.N.Y. Oct. 22, 2021) (same).

Here, Lopez-Pena has not submitted evidence that substantiates his mother's health condition or her need for assistance. Besides the statement that his mother "suffers from Alzheimer's and diabetes" and the attached letters from friends and family that echo this statement, Lopez-Pena has provided no "medical tests, results, and diagnoses" that substantiate these claims. *Ebbers*, 432 F. Supp. 3d at 423 n.1.

Moreover, Lopez-Pena has not established that he is the *only* available caregiver for his mother. *See, e.g., Wang*, 2020 WL 2668252, at *1 ("Even if there were evidence that [Movant's] parents cannot care for themselves, [Movant] has not explained why his . . . wife -- who lives with his parents -- cannot provide the necessary care." (citation omitted)); *see also United States v. Elm*, No. 16 Cr. 356 (ER), 2024 WL 4026024, at *3-4 (S.D.N.Y. Sept. 3, 2024) (accepting as "extraordinary and compelling" a movant's claim that he was needed to care for his ill son because he "has provided proof that he is the only available caregiver"); *United States v. Ayala*, No. 21 Cr. 111 (NRB), 2022 WL 2334041, at *3 (S.D.N.Y. June 27, 2022) (denying a motion for compassionate release because the movant was not the only available caregiver for his son); *United States v. Ortiz*, No. 18 Cr. 476-02 (NRB), 2022 WL 16962291, at *2 (S.D.N.Y. Nov. 16, 2022) (denying a motion for compassionate release because the movant was not the only available caregiver for an ill family member).

In a letter attached to Lopez-Pena's motion, his sister, Daira, writes that she and her "two older sisters . . . currently care for [their] mother." Dkt. 153 at 17. Accordingly, because of the availability of multiple alternative caregivers, the health of Lopez-Pena's mother is not an extraordinary and compelling reason to grant compassionate release.

### B. *Changes in Law*

Lopez-Pena alternatively argues that he should be granted relief because, if he were to be sentenced today, current law would afford him a more lenient sentence. Dkt. 153 at 3-4. He cites three cases for this proposition: *Alleyne v. United States*, 570 U.S. 99 (2013); *United States v. Haymond*, 588 U.S. 634 (2019); and *Erlinger v. United States*, 602 U.S. 821 (2024). *Alleyne* holds that facts increasing a defendant's mandatory minimum sentence must be submitted to the jury for consideration; *Haymond* holds that facts about a violation of supervised release increasing a defendant's exposure to punishment must be submitted to a jury; and *Erlinger* similarly holds that facts increasing a defendant's exposure to punishment under the Armed Career Criminal Act must be submitted to a jury. *Alleyne*, 570 U.S. at 99; *Haymond*, 588 U.S. at 634; *Erlinger*, 602 U.S. at 821.

Putting aside the issue of whether these cases have retroactive effect, Lopez-Pena has not shown that these cases, even if applicable, would produce "a gross disparity between the sentence being served and the sentence likely to be imposed"

5

under present law because their holdings do not implicate the facts of Lopez-Pena's case. U.S.S.G. § 1B1.13(b)(6). First, when imposing Lopez-Pena's sentence, I did not conduct any judicial fact-finding that increased Lopez-Pena's statutory minimum or maximum punishments, and Lopez-Pena's sentence of 540 months was neither the minimum nor maximum sentence available. *See* Dkt. 99 at 2-3; Dkt. 70 at 15; *see also United States v. Washington,* 103 F.4th 917, 923 (2d Cir. 2024) ("It is well-settled that 'factfinding used to guide judicial discretion in selecting a punishment within limits fixed by law' does not implicate the Sixth Amendment . . . .") (quoting *Alleyne,* 570 U.S. at 113 n.2). Second, Lopez-Pena was also not charged with violating terms of supervised release, and so *Haymond* does not apply. *See United States v. Doka,* 955 F.3d 290, 295-96 (2d Cir. 2020) (adopting the narrowest reasoning from *Haymond* given the lack of a majority for the decision, meaning that the decision only applies to certain revocations of supervised release). Third, Lopez-Pena was also not sentenced under the Armed Career Criminal Act, and so *Erlinger* does not apply. *See United States v. Saunders,* No. 23-6735-cr, 2024 WL 4533359, at *2 (2d Cir. Oct. 21, 2024) (summary order) ("*Erlinger* held that . . . a defendant is entitled to have a unanimous jury determine beyond a reasonable doubt that the defendant's past offenses were committed on separate occasions for [Armed Career Criminal Act] purposes."). Because Lopez-Pena's cited cases do not change the law relevant to his conviction and sentencing, these

changes do not constitute an extraordinary and compelling reason to grant compassionate release.

### C. *Section 3553(a) Sentencing Factors*

Moreover, I continue to believe that the sentencing factors from section 3553(a) weigh against granting Lopez-Pena relief. *See* Dkt. 149. Section 3553(a) factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" and (2) "the need for the sentence imposed" to "reflect the seriousness of the offense . . . and to provide just punishment . . . [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(1)-(2).

As I stated at Lopez-Pena's sentencing hearing in 2008, "a sentence of life imprisonment would be wholly appropriate" for Lopez-Pena's offense because of "the quantity of drugs involved, . . . the use of violence," and "the use of weapons." Dkt. 70 at 5. Lopez-Pena "was a high-ranking member of the Norte Valle cartel," "[t]here was evidence of his involvement in three murders in 1996," and "[t]here was evidence . . . of [his] efforts to corrupt the police in Colombia." *Id.* Taking all of these factors into account, I was inclined to "impose a sentence of life imprisonment." *Id.* But because of an extradition treaty with Colombia, I sentenced Lopez-Pena to 540 months of imprisonment and 5 years of supervised release. Dkt. 71. Accordingly, I see no reason to alter the conclusion I reached in sentencing Lopez-Pena in 2008, denying his motion

for a reduced sentence in 2016, and denying his previous motion for compassionate release in 2023. *See* Dkts. 98, 149.

## II.     Motion for Reduction of Sentence

Under 18 U.S.C. § 3582(c)(2), "a federal court may reduce a defendant's sentence if the defendant was originally sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission when that modification is made retroactive." *United States v. Elendu*, No. 20 Cr. 179-14 (DLC), 2024 WL 458643, at *2 (S.D.N.Y. Feb. 6, 2024) (citing *United States v. Martin*, 974 F.3d 124, 136, 139 (2d Cir. 2020)). To do so, the court must first "determine the amended guideline range that would have been applicable to the defendant if [the amendment] had been in effect at the time the defendant was sentenced." *United States v. Zapatero*, 961 F.3d 123, 127 (2d Cir. 2020) (quoting U.S.S.G. § 1B1.10(b)(1)). "If the defendant is eligible for a sentence reduction, 'a court may reduce the term of imprisonment after considering the factors set forth in section 3553(a) and if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission,' which are contained in U.S.S.G. § 1B1.10." *Elendu*, 2024 WL 458643, at *2 (quoting *Martin*, 974 F.3d at 136).

Amendment 821 to the Sentencing Guidelines went into effect on November 1, 2023, and applies retroactively. *See* U.S.S.G. § 1B1.10(d). As relevant here, Part B of the Amendment provides a decrease of two offense levels for "zero point

offenders" (offenders who have no criminal history points) and "whose offense did not involve specific aggravating factors." *United States v. Weir*, No. 22 cr. 695-001 (DLC), 2024 WL 3429480, at *2 (S.D.N.Y. July 16, 2024); U.S.S.G. § 4C1.1.

At the time of sentencing, Lopez-Pena had an offense level of 44, a Criminal History of Category I, and a guideline range of life imprisonment. Dkt. 70 at 4. Now, Lopez-Pena petitions this Court to find him eligible for "zero point offender" relief based on serving 19 years of his sentence and his good behavior while incarcerated. Dkt. 151 at 3-4.

Lopez-Pena does not meet the necessary criteria to render him a "zero point offender" eligible for a sentence reduction pursuant to section 4C1.1. Section 4C1.1 requires, among other things, that "the defendant did not use violence or credible threats of violence in connection with the offense" and "the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense." U.S.S.G. § 4C1.1(a)(1)-(11). Lopez-Pena was a high ranking member of a drug cartel that engaged in violence, kidnapping, murder, and use of weapons. Dkt. 70 at 5; Dkt. 99 at 2; Dkt. 149 at 3-4. His good behavior alone does not override the requirements for eligibility.

9

Finally, even if Lopez-Pena were eligible for a sentence reduction, I would not grant Lopez-Pena's request for the reasons set forth above and in my prior decisions. Dkts. 99, 101, 113.

## CONCLUSION

For the foregoing reasons, Lopez-Pena's motion for compassionate release, Dkt. 153, and motion for reduction of sentence, Dkt. 151, are DENIED. Lopez-Pena's "motion for expedited consideration," Dkt. 154, of his motion for compassionate release is DENIED as MOOT.

SO ORDERED.

Dated:   New York, New York
         August 11, 2025

DENNY CHIN
United States Circuit Judge
Sitting by Designation